**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Farshid Rafieikhajegini,<br><br>          Plaintiff,<br><br>v.<br><br>United States Department of State, et al.,<br><br>          Defendants. | No. CV-23-01972-PHX-DWL<br><br>**ORDER** |

Pending before the Court is Defendants' motion to dismiss. (Doc. 15.) For the following reasons, the motion is granted.

## RELEVANT BACKGROUND

On September 19, 2023, Farshid Rafieikhajegini ("Plaintiff") initiated this action by filing the complaint. (Doc. 1.) The complaint alleges that in January 2019, Plaintiff, who is a citizen of the United States, filed a "Petition for Alien Relative," Form I-130, on behalf of his mother, Zorheh Bashash ("Plaintiff's Mother"), who is a citizen of Iran. (*Id.* ¶¶ 1-2, 13.) This visa application was eventually forwarded to the U.S. Embassy in Abu Dhabi, United Arab Emirates ("UAE"), so a consular officer could interview Plaintiff's Mother. (*Id.* ¶¶ 16, 17.) The interview took place on November 14, 2022. (*Id.* ¶ 17.)

Much of the dispute in this case turns on how to characterize what happened next. In the complaint, Plaintiff alleges "[s]ince [the interview], the agency has *refused to issue a decision* on this case." (*Id.*, emphasis added.) As a result, Plaintiff seeks "a writ of mandamus compelling Defendants to adjudicate a long-delayed immediate relative visa

application." (*Id.* at 2.) The two bases for this request for mandamus relief are the Administrative Procedures Act ("APA") and the Due Process Clause of the Fifth Amendment. (*Id.* ¶¶ 19-37.)

On December 27, 2023, Defendants filed a motion to dismiss. (Doc. 15.)[1] Among other things, Defendants disagree with Plaintiff's contention that this case involves a failure to take action. According to Defendants, the consular officer in the UAE made a final decision on November 14, 2022 to refuse the visa application, albeit while leaving open the possibility that the refusal might be subject to reconsideration based on Plaintiff's Mother's response to certain security-related screening questions posed in a form known as "Form DS-5535":

> [Plaintiff's Mother] appeared for her consular interview at the U.S. Embassy in Abu Dhabi and applied for an immigrant visa on November 14, 2022. *On the same date, the consular officer refused [her] visa application under INA § 221(g), 8 U.S.C. §1201(g), to conduct additional security screening . . .* [and] the U.S. Embassy in Abu Dhabi emailed Form DS-5535, Supplemental Questions for Visa Applicants, to [Plaintiff's Mother]. . . . [T]he U.S. Embassy in Abu Dhabi received [her] responses to the questions raised in the Form DS-5535 on or before November 17, 2022. As of the date of this declaration, [her] visa application *remains refused* under INA §221(g), 8 U.S.C. §1201(g).

(Doc. 15-1 ¶¶ 8-12, emphases added.)

The motion to dismiss is now fully briefed. (Docs. 19, 26.) Neither side requested oral argument.

**DISCUSSION**

I. <u>Subject-Matter Jurisdiction</u>

   A. **Legal Standard**

Courts "have an independent obligation to determine whether subject-matter jurisdiction exists." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). *See also* Fed. R.

---

[1] Defendants are (1) the United States Department of State, (2) "Embassy of the United States in Abu Dhabi, United Arab Emirates," (3) "Antony Blinken, the U.S. Secretary of State," and (4) "Eric Gaudiosi," "Charge d'Affaires of the Embassy of the United States in Abu Dhabi, United Arab Emirates." (Doc. 1 ¶¶ 3-6.)

Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). "Under Rule 12(b)(1), a defendant may challenge the plaintiff's jurisdictional allegations in one of two ways. A 'facial' attack accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (internal quotation marks omitted). "A 'factual' attack, by contrast, contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Id.*

### B. Analysis

Defendants contend the Court lacks subject-matter jurisdiction over Plaintiff's claims because (1) they are barred by the doctrine of consular nonreviewability; and/or (2) they are moot. (Doc. 15 at 5-8.)

#### 1. Consular Nonreviewability

As noted, Defendants contend that the consular officer reached a final decision on November 14, 2022 to refuse Plaintiff's Mother's visa application, albeit while keeping open the possibility of future reconsideration. Based on this understanding of the consular officer's conduct, Defendants contend this lawsuit must be dismissed pursuant to the doctrine of consular nonreviewability. (*Id.* at 6-8, citation omitted ["The consular officer in this case refused Plaintiff's visa application pursuant to INA § 221(g) on November 14, 2022. This Court lacks subject matter jurisdiction under Rule 12(b)(1) to review this decision in any manner, which is fundamentally what Plaintiff's Complaint asks this Court to do."].)

The Court disagrees that the doctrine of consular nonreviewability is applicable here. That doctrine enshrines a "longstanding jurisprudential principle that, ordinarily, a consular official's decision to deny a visa to a foreigner is not subject to judicial review." *Munoz v. U.S. Dep't of State*, 50 F.4th 906, 909 (9th Cir. 2022) (cleaned up). For the doctrine to apply, the denial of a visa application must have occurred. *See, e.g.*, *Patel v. Reno*, 134 F.3d 929, 931-32 (9th Cir. 1997) ("Normally a consular official's discretionary

decision to grant or deny a visa petition is not subject to judicial review. However, when the suit challenges the authority of the consul to take or fail to take an action as opposed to a decision taken within the consul's discretion, jurisdiction exists.") (citations omitted).

Defendants effectively seek to characterize the consular officer's "refusal" of the visa application on November 14, 2022 as a denial. (Doc. 15 at 6 ["[T]he doctrine of consular non-reviewability precludes this Court from ordering the State Department to review or reissue a decision on [Plaintiff's Mother's] already refused visa application."].) In support, Defendants cite § 221(g) of the Immigration and Nationality Act ("INA"), which is codified at 8 U.S.C. § 1201(g). (Doc. 15 at 1; Doc. 26 at 1-2.) The Court respectfully disagrees that § 1201(g) compels this characterization of the consular officer's conduct. As one court explained, § 1201(g) "itself" does not support the proposition that a consular officer's non-issuance of a visa following a consular interview amounts to a "final refusal[] as a matter of law" because "§ 1201(g) merely contains the (expansive) criteria for refusing an application; it does not establish when or whether, as a matter of law, an application has been refused." *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Kerry* ("*Nine Iraqi Allies*"), 168 F. Supp. 3d 268, 288 (D.D.C. 2016).

Additionally, Defendants' position is difficult to reconcile with the fact that the State Department sent a Form DS-5535 to Plaintiff's Mother in the immediate aftermath of her consular interview, which she completed and returned three days later. Under the State Department's regulations, a consular officer may send a Form DS-5535 to a visa applicant "whenever the officer believes that the information provided in Form DS-230 or Form DS-260 is inadequate to determine the alien's eligibility to receive an immigrant visa." 22 C.F.R. § 42.63(c). This suggests the consular official did not reach a final decision to deny Plaintiff's Mother's visa application on November 14, 2022, but instead kept it under consideration pending receipt and consideration of the information in her Form DS-5535.

For these reasons, many courts have concluded that an "unreasonable delay" claim may proceed where, as here, the plaintiff seeks to challenge the State Department's failure

to take timely action on a visa application following the submission of a Form DS-5535 after the consular interview. *See, e.g., Taherian v. Blinken*, 2024 WL 1652625, *1, *4 (C.D. Cal. 2024) (rejecting claim of consular nonreviewability where "[e]ach Beneficiary Plaintiff participated in a consular interview, had their visa refused under 8 U.S.C. § 1201(g), and was then asked to submit supplemental information via a DS-5535 form" and explaining: "Plaintiffs here do not challenge their visa refusals under 8 U.S.C. § 1201(g). Rather, Plaintiffs contend that a final decision has not yet been made, and they challenge the government's delay in issuing decisions."); *Sharifi v. Blinken*, 2024 WL 1798185, *1, *3 (E.D.N.Y. 2024) (rejecting claim of consular nonreviewability where the consulate emailed a Form DS-5535 to the applicant following her interview at the consulate, because "though nominally 'refused,' Mahin's visa application remains under consideration in a state of administrative limbo that cannot fairly be described as a final determination"); *Sawahreh v. U.S. Dep't of State*, 630 F. Supp. 3d 155, 158, 160 (D.D.C. 2022) (concluding, where the plaintiff's "application status" was listed "as 'refused'" but the plaintiff was also told following his consular interview that "he would need to complete and return a Form DS-5535—a supplemental questionnaire—as part of his visa-application process," that the visa application "has not been finally refused" and thus "the doctrine of consular non-reviewability is inapplicable") (cleaned up). *See also Akbar v. Blinken*, 2023 WL 8722119, *1-2 (S.D. Cal. 2023) (denying motion to dismiss where the consular interview took place on November 7, 2022, the consular officer then "refused [the] visa application" but also "sent a request to [the plaintiff] for additional information consistent with Form DS-5535," the plaintiff then "completed and submitted Form DS-5535," and the application "was then placed in administrative processing, where it has remained indefinitely since that time") (internal quotation marks omitted). *But see Bamdad v. U.S. Dep't of State*, 2024 WL 1462948, *3 (W.D. Tex. 2024) (dismissing similar lawsuit pursuant to doctrine of consular nonreviewability).

Finally, even outside the context of cases involving the issuance of a Form DS-5535 following the consular interview, the Ninth Circuit and other courts have determined that

a consular officer's refusal to issue a visa at the time of the consular interview does not necessarily qualify as a final denial that triggers the doctrine of consular nonreviewability. *Patel*, 134 P.3d at 931-32 (rejecting claim of consular nonreviewability, even though a consular officer wrote a letter stating that the plaintiff's visa "application is refused," because the consulate was functionally "holding the visa applications in abeyance" pending the receipt of additional information and thus "the consulate's letter is not a refusal within the meaning of 22 C.F.R. § 42.81"); *Nine Iraqi Allies,* 168 F. Supp. 3d at 284-92 (rejecting the government's arguments that any time a visa applicant "leaves a consular interview without a visa in hand, his or her application has been denied" and that "because all visas are either issued or denied immediately, any further processing of a visa application is best viewed as a 'reconsideration' of the application's denial" and concluding that "because the applications . . . remain in 'administrative processing' and, therefore, have not been finally refused, the doctrine of consular nonreviewability does not bar their claims").

        2.    <u>Mootness</u>

For similar reasons, Defendants' request for dismissal pursuant to the mootness doctrine lacks merit. (Doc. 15 at 5-6.) Defendants' argument on this point is that because the State Department already "took the very action required under INA § 221(g), 8 U.S.C. § 1201(g) and 22 [C.F.R.] § 42.81(a), when it refused [the] visa application on November 14, 2022," any "request that the Court order the State Department to adjudicate [Plaintiff's] mother's visa application is therefore moot." (*Id.*) But Plaintiff is not seeking review of the refusal to issue a visa immediately following the consular interview—rather, Plaintiff seeks to challenge Defendants' inaction *since then*, including the failure to act following the post-interview receipt of Plaintiff's Mother's completed Form DS-5535. (Doc. 1 ¶¶ 17-18 ["The State Department conducted [Plaintiff's Mother's] visa interview on or about November 14, 2022. Since that time, the agency has refused to issue a decision on this case. [Plaintiff] has made repeated attempts to obtain a decision in this matter without involving this honorable Court. Plaintiff has contacted the embassy multiple times. This has led nowhere."]; Doc. 19 at 6, emphasis omitted [arguing that the "claims are not moot"

in part because "Plaintiff complains that Defendants have, for over four years and counting, unreasonably delayed the adjudication of his mother's visa application"].) It follows that Plaintiff's claims are not moot. *Taherian*, 2024 WL 1652625 at *3 ("Plaintiffs . . . allege that the information submitted through DS-5535 forms is necessary to the visa-approval process, and that even the Department of State refers to these refusals that occur after interviews but before receiving the DS-5535 form as 'quasi-refusals.' Based on these allegations and submissions, it does not seem that Plaintiffs' visa applications have been finally ruled upon such that their claims would be rendered moot.") (cleaned up); *Sharifi*, 2024 WL 1798185 at *3 ("[T]his nominal 'refusal' does not constitute a final agency action. Since Mahin's visa application has not yet been finally resolved, Plaintiff's complaint is not mooted by USCIS's purported 'refusal' pursuant to Section 221(g). Therefore, the Government's motion to dismiss on mootness grounds is denied.").

II.   Merits

   A.   **Legal Standard**

Under Rule 12(b)(6), "to survive a motion to dismiss, a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1444-45 (citation omitted). However, the Court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678-80. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. The Court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

…

B.  **Analysis**

Defendants argue that Plaintiff's claims are subject to dismissal under Rule 12(b)(6) because (1) Plaintiff has failed to identify "any mandatory, non-discretionary duty to act," as required to support a claim for mandamus or APA relief (Doc. 15 at 9-11); and (2) "[e]ven assuming Plaintiff could demonstrate the existence of a non-discretionary duty, Plaintiff fails to state a plausible APA claim regarding unreasonable delay" (*id.* at 11-17).

1.  Mandatory, Non-Discretionary Duty To Act

"Because mandamus relief and relief under the APA are in essence the same, when a complaint seeks relief under the Mandamus Act and the APA and there is an adequate remedy under the APA, we may elect to analyze the APA claim only." *Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022) (cleaned up). Accordingly, the Court will limit its Rule 12(b)(6) analysis to Plaintiff's APA claim. As Defendants correctly note, an APA claim alleging "unlawfully withheld" agency action "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original).

According to Defendants, Plaintiff cannot meet this requirement because he "cannot establish the State Department has a non-discretionary duty to complete any additional security screening and *re*-adjudicate his mother's visa application and issue *another* decision." (Doc. 15 at 9, emphases added.) Defendants continue: "Any duty the State Department had to act was satisfied by the visa's refusal under INA § 221(g). . . . No agency action has been withheld because the consular officer has complied with the regulation, refusing [Plaintiff's Mother's] visa application under INA § 221(g)." (*Id.* at 10-11.)

These arguments fail for the same reasons as Defendants' jurisdictional arguments—they are based on the mistaken premise that the consular officer made a final decision on November 14, 2022 to deny Plaintiff's Mother's visa application and that Plaintiff is now seeking reconsideration of that decision. But as discussed in Part I.B above, the challenged conduct is better viewed as failing to act on Plaintiff's Mother's visa

application after soliciting and receiving the Form DS-5535 in November 2022. So conceptualized, Plaintiff has adequately identified the mandatory, non-discretionary action necessary to support his APA claim. *Cf. Patel*, 134 F.3d at 932-33 ("Most importantly, [the refusal] is not a final decision. As respondents' counsel admitted during oral argument, the consulate is holding the visa applications in abeyance. . . . Therefore, we find that the consulate had a duty to act and that to date, eight years after application of the visas, the consulate has failed to act in accordance with that duty and the writ should issue.").

### 2. Unreasonable Delay

Both sides agree that Plaintiff's unreasonable delay claim under the APA will ultimately be governed by standard set forth in *Telecomms. Research & Action Ctr. v. F.C.C.* ("*TRAC*"), 750 F.2d 70 (D.C. Cir. 1984). (Doc. 15 at 11-12; Doc. 19 at 12.) However, Plaintiff contends that because the "analysis under *TRAC*" requires a "fact-intensive inquiry" and is "a complicated and nuanced task," any such analysis "is premature at the motion to dismiss stage." (Doc. 19 at 16, cleaned up.)

The Court disagrees. Although Plaintiff need not conclusively establish, at this stage of the case, that he will prevail under the *TRAC* standard, he still must allege sufficient facts to create a plausible entitlement to relief. *Iqbal*, 556 U.S. at 678. *See also Shahijani v. Laitinen*, 2023 WL 6889774, *3 (C.D. Cal. 2023) (rejecting similar argument by plaintiff in APA action challenging delay in adjudicating visa application). Plaintiff's approach would also seemingly allow plaintiffs to use the discovery process to determine whether they can discover enough facts to assert a plausible claim for relief, an approach that would undermine the purposes of Rule 12(b)(6). *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Appellant argues that the district court should not have dismissed its claims without permitting discovery. . . . [This] position is unsupported and defies common sense. The purpose of [Rule] 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery. . . . [I]f the allegations of the complaint fail to establish the requisite elements of the cause of action,

our requiring costly and time consuming discovery and trial work would represent an abdication of our judicial responsibility.") (cleaned up).

Turning to the merits, the "hexagonal contours" of the *TRAC* standard are as follows: "(1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80 (cleaned up).

In a nutshell, Defendants' argument as to the *TRAC* factors is that the "length of delay" here of "slightly more than ten months at the time this case was filed" cannot be considered unreasonable as a matter of law, particularly in light of the absence of a precise statutory timeline governing the adjudication of visa applications, the fact that prioritizing Plaintiff's Mother's application would simply push other visa applicants further back in line, the fact that Plaintiff's claimed hardship is common, and the absence of bad faith on the part of the agency. (Doc. 15 at 12-17.)

In response, Plaintiff contends he has stated a plausible claim under the *TRAC* standard because the delay in this case "span[s] . . . five years and counting," given that the visa application "has been pending since January 2019." (Doc. 19 at 13.) Plaintiff also cites decisions in which district courts have held that a delay of more than two years in adjudicating a visa application is unreasonable, disagrees that his hardship is common, and contends there is evidence of bad faith. (*Id.* at 13-16.)

In reply, Defendants argue that "[e]ven if there were no final agency decision despite the visa refusal [in November 2022], this Court should measure any alleged delay from the

November [2022] consular interview date." (Doc. 26 at 6.)  In a related vein, Defendants argue that the starting point for the delay cannot possibly be when the visa application was initially filed in January 2019 because it was filed with United States Citizenship and Immigration Services ("USCIS"), an agency that isn't even named as a defendant in this action and doesn't have authority to issue visas. (*Id.* at 7.)  Defendants then elaborate upon some of the arguments from their motion to dismiss regarding the other *TRAC* factors. (*Id.* at 7-9.)

As both sides seem to recognize, calculating the length of the relevant delay is a prerequisite to evaluating whether that delay is "unreasonable" in light of the *TRAC* factors.  The Court agrees with Defendants that January 2019 cannot serve as the starting point for the delay here.  Instead, the starting date is November 2022, which is when the consular interview took place, the initial "refusal" occurred, the Form DS-5535 was sent to Plaintiff's Mother, and the completed form was returned to the State Department.  It is Defendants' failure to act following the receipt of that supplemental information that lies at the heart of Plaintiff's claim of delay.  Plaintiff seems to acknowledge as much at times in his complaint and response brief. (Doc. 1 ¶ 17, emphasis added ["The State Department conducted [Plaintiff's Mother's] visa interview on or about November 14, 2022. *Since that time*, the agency has refused to issue a decision on this case."]; Doc. 19 at 11, citation omitted ["A 'refusal' is not a final decision as the consular officer requested additional information for further review following the applicant's interview.  Plaintiff's mother promptly submitted the requested information and has been waiting in limbo since then."].)  Courts routinely follow this approach in "unreasonable delay" cases in which a consular officer declined to issue a visa following a consular interview and instead directed the applicant to complete a Form DS-5535. *Shahijani*, 2023 WL 6889774 at *1, *4 (measuring the relevant period of delay as "roughly eight months" where the plaintiff filed the visa application in February 2020, USCIS approved the application in June 2021, the consular interview took place in February 2023, the lawsuit was filed in May 2023, and the dismissal order was issued in October 2023); *Sharifi*, 2024 WL 1798185 at *1, *4 (measuring the

relevant period of delay as "barely over a year" where the plaintiff filed the visa application in June 2020, the consular interview took place in February 2023, the State Department emailed a Form DS-5535 to the applicant "[t]he same day," the lawsuit was filed in July 2023, and the dismissal order was issued in April 2024); *Sawahreh*, 630 F. Supp. 3d at 157-58, 162 (measuring the relevant period of delay as "only fifteen months" where the plaintiff "interviewed for the visa on April 27, 2021, at the U.S. Embassy in Doha," "[t]he Embassy emailed Sawahreh the same day, informing him that he would need to complete and return a Form DS-5535," and "Plaintiff filed this suit on March 24, 2022").

Using November 2022 as the starting point, the period of delay was only 10 months at the time Plaintiff initiated this action in September 2023.[2] As a result, the first *TRAC* factor strongly favors Defendants. Even recognizing that there are no bright-line rules, the delay here falls far short of what has been deemed actionable in this context. *See, e.g.*, *Shahijani*, 2023 WL 6889774 at *5 ("A delay of roughly eight months, though inconvenient for Plaintiff, is not sufficient to establish unreasonable delay. While the length of a delay is not itself dispositive, it can tip the scales in a case where there are no other compelling allegations. The allegations in the Petition are thus insufficient to state a plausible claim for unreasonable delay.") (citation omitted); *Sharifi*, 2024 WL 1798185 at *4 ("Mahin has remained in administrative limbo since her interview on February 13, 2023. Without further allegations absent here, this delay of barely over a year falls far short of the amount of delay required to sustain a claim for unreasonable delay under the APA.") (citation omitted); *Sawahreh*, 630 F. Supp. 3d at 161-64 (ordering dismissal where delay was 15 months); *Sarlak v. Pompeo*, 2020 WL 3082018, *6 (D.D.C. 2020) ("No bright lines have been drawn in this context, but district courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to

---

[2] The Court notes that some of the decisions cited in the previous paragraph seem to measure the period of delay as beginning when the consular interview occurred and ending when the dismissal order was issued. It seems to the Court that the more appropriate endpoint is when the complaint was filed, since the purpose of the Rule 12(b)(6) analysis is to measure the plausibility of the allegations in the complaint. Nevertheless, the outcome here would not change if the endpoint were deemed the issuance date of this order—in that scenario, the delay would still be only 18 months.

- 12 -

five years are often not unreasonable.") (cleaned up). Tellingly, Plaintiff seems to acknowledge that a delay of two years is the minimum necessary to support a plausible claim in this context. (Doc. 19 at 13 [all of Plaintiff's cited cases involved a "more than two-year delay"].)

Given this backdrop, the remaining *TRAC* factors do not require extensive discussion. For similar reasons to those given in *Shahijani*, the Court concludes that the remaining *TRAC* factors are essentially neutral and do not, at any rate, cut so decisively in Plaintiff's favor as to support a plausible entitlement to relief in light of the resolution of the first (and most important) factor in Defendants' favor. *Shahijani*, 2023 WL 6889774 at *4-5 (concluding that the second factor was neutral because "there is no congressionally mandated timetable for adjudicating family immigrant visa applications," the third and fifth factors weighed only mildly in the plaintiff's favor because "[although t]he Court is sympathetic to Plaintiff's circumstances . . . [and] Plaintiff has an interest in a timely adjudication of [her husband's visa] application, so too do many others facing similar circumstances," the fourth factor strongly favored the government in part because "pushing [Plaintiff's husband's] application to the front of the line would delay the applications of others, who also have human welfare and interests at stake," and the sixth factor was neutral) (cleaned up).

III. <u>Leave To Amend</u>

Defendants ask the Court to dismiss the complaint without leave to amend. (Doc. 26 at 13-14.) Although Plaintiff does not request leave to amend in the event of dismissal, the Ninth Circuit has suggested that, in certain circumstances, "a district court should grant leave to amend even if no request to amend the pleading was made." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (citation omitted).

The decision whether to grant leave to amend is governed by Rule 15(a) of the Federal Rules of Civil Procedure, which "advises the court that 'leave [to amend] shall be freely given when justice so requires.'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). "This policy is 'to be applied with extreme liberality.'" *Id.*

Thus, leave to amend should be granted unless "the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

Here, the Court concludes that leave to amend should be denied because the complaint is being dismissed based on deficiencies that could not be cured through the pleading of new facts. *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment . . . constitutes an exercise in futility."). *See also Shahijani*, 2023 WL 6889774 at *5 (ordering dismissal without leave to amend, based on futility, in similar case); *Teymouri v. U.S. Citizenship and Immigration Servs.*, 2022 WL 18717560, *5 (C.D. Cal. 2022) (same). However, the Court also clarifies that the dismissal here is without prejudice, such that Plaintiff may bring a future action if the delay persists. *See, e.g.*, *Shahijani*, 2023 WL 6889774 at *6 (clarifying that the dismissal without leave to amend was "without prejudice to [the case being] refiled should later circumstances demonstrate an unreasonable delay"); *Cohen v. Jaddou*, 2023 WL 2526105, *7 (S.D.N.Y. 2023) ("[T]he motion to dismiss is GRANTED without prejudice to its renewal should Plaintiff's application remain pending to an unreasonable degree. The Clerk of Court is respectfully directed to . . . close this case."); *Kayvan v. Pompeo*, 2020 WL 5834805, *9 (N.D. Cal. 2020) ("In sum, after considering all of the *TRAC* factors with particular attention to the rule of reason, the Court concludes that Plaintiffs' allegations are insufficient to state a plausible claim of unreasonable delay. The first APA claim for unreasonable delay is dismissed without leave to amend, but without prejudice to refiling at a later date should Plaintiffs' circumstances change."); *Naghibolashrafi v. Pompeo*, 2020 WL 1288409, *5 (N.D. Cal. 2020) (same); *Zafarmand v. Pompeo*, 2020 WL 4702322, *14 (N.D. Cal. 2020) (same). *See generally* Fed. R. Civ. P. 41(b) ("*Unless the dismissal order states otherwise*, . . . any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.") (emphasis added); *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 132 (D.C. Cir. 2012) (Kavanaugh, J., concurring) ("[U]nder Rules 41(b) and 12(b)(6), a district court

has discretion to dismiss a complaint without prejudice when the district court concludes that circumstances so warrant.").[3]

Accordingly,

**IT IS ORDERED** that:

1. Defendants' motion to dismiss (Doc. 15) is **granted**.

2. The complaint is dismissed without leave to amend, but without prejudice.

3. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 21st day of May, 2024.

  Dominic W. Lanza
  United States District Judge

---

[3] Some courts have concluded that when an "unreasonable delay" claim is subject to dismissal under Rule 12(b)(6), leave to amend should be granted because the period of delay may be longer by the time of amendment. *Kiani v. Blinken*, 2024 WL 658961, *6 (C.D. Cal. 2024) (granting motion to dismiss but stating that "[a]s the delay regarding Plaintiffs' visa application is ongoing, Plaintiffs shall be given leave to amend"); *Andalib v. United States*, 2024 WL 685945, *8 (C.D. Cal. 2024) ("For the reasons stated, the Motion [to Dismiss] is GRANTED.  The court GRANTS Plaintiff leave to amend the Complaint's claim for unreasonable agency delay under the APA and/or Mandamus Act, albeit with some skepticism given the present balance of the *TRAC* factors.") (cleaned up). The potential difficulty with this approach is that it could encourage the premature filing of "unreasonable delay" actions, which would then be subject to successive dismissal motions as to which leave to amend could always be sought on the ground that the delay will be longer by the time of the next amendment.  The approach being followed here and in *Shahijani*, *Cohen, Kayvan*, *Naghibolashrafi*, and *Zafarmand*—dismissing without leave to amend, but without prejudice—avoids this inefficient and docket-clogging possibility while still preserving the plaintiff's ability to seek relief.